WILLIAM CRAIG AND JACOB ANGLE, JR., vs. HENRY ANKENEY.—December 1846.

Where a cause is set down for final hearing upon bill and answer, the averments of the bill are qualified by those in the answer.

Where two parties are equally bound by separate instruments, under seal, as securities, for the payment of the same debt, and a payment by one redounds to the discharge of the other, the one, making the payment, may recover by way of contribution, either at law, or in equity.

Parties equally bound as sureties by different instruments for the same debt, may still be liable to each other for contribution. The doctrine of contribution is not founded on contract, but upon an implied equity resting upon natural justice, and sound morality.

Where parties are so bound, it would be against equity to permit one to recover from the other, more than a moiety of the amount paid by him, in satisfaction of a debt, for the payment of which both are equally responsible.

A court of chancery never will, against equity and conscience, interpose by way of injunction, to arrest the progress of proceedings at law, unless required to do so upon principles of public policy.

One security cannot, by injunction, arrest the proceedings at law of his co-security against him, for contribution, unless he tenders the principal and interest due such co-security, who had paid the principal debtor; or allege, that he was ready and willing to bring the same into court to be paid to him, as a condition of the court's interference.

APPEAL from the Equity side of *Washington* county court.

On the 25th of March, 1844, *Henry Ankeney,* filed his bill against *William Craig* and *Jacob Angle, Jr.,* alleging, that about the 25th January 1842, *Jacob H. Barnett* called on him, saying, he was indebted to a certain *William Craig,*

in the sum of $263, and desired your orator to become his surety in a single bill, to said *Craig*, for that amount; that he did become surety for said *B.*, on said note, payable to *C.* That when said note was taken by said *Barnett* to said *Craig*, he, the said *Craig*, refused to accept the same, saying, the debt due to him by said *Barnett*, was well secured by a certain *Jacob Angle, Jr.*, who was security to him for said *Barnett.* That soon thereafter, the said *Barnett* become heavily embarrassed, and the said *Angle* becoming uneasy on account of his liability for him, and the said note not being destroyed, as it should have been when *Craig* refused to take the same, applied to the said *Craig*, requesting him to assign said note to him, which the said *Craig* at first was unwilling to do, he having no interest in the same, but at length, by the importunity of the said *Angle*, the said *Craig* did assign the same to him; the said *Angle*, after the refusal of the said *Craig* to accept the same, obtained and retained possession of said note, having so obtained possession of said note and assignment, has caused suit to be instituted on said note in the name of the said *Craig*, the legal plaintiff, for his use, which said suit is now pending in *Washington* county court, and stands for trial at the March term ensuing. And your orator exhibits a copy of said note, which he prays may be taken as part of his bill, viz:—

"$263.—Twelve months after date, we, or either of us, promise to pay *William Craig*, or order, the sum of $263, for value received, this 25th day of January 1842, with interest from date. J. H. BARNETT, ( Seal. )

HENRY ANKENEY, ( Seal. )"

On the back of the same is the following endorsement:—

"November 9th, 1843. I hereby sign my right and title of the within note to *Mr. Jacob Angle, Jr.*

WM. CRAIG."

Prayer for subpœna and injunction, forbidding the prosecution of the action at law.

On the 26th March 1844, BUCHANAN, A. J., ordered, that an injunction issue, in pursuance of the prayer of the within bill.

The answer of *W. Craig* is omitted, as not material.

The answer of *Jacob Angle, Jr.*, set forth, that it is true, as stated in said bill, that a certain *J. H. B.*, was indebted to a certain *W. C.*, about the 25th January 1843, in the sum of, &c., that in or about the month of October 1840, the said *Jacob H. Barnett*, and a certain *Daniel M. Bowles*, were partners; that in or about the month of October 1840, the said *Bowles*, as one of the said partners aforesaid, purchased from the said *Craig* a quantity of corn, amounting to the sum of $250.57; that after said corn had been purchased, an arrangement was made between the said *B.* and *B.*, by which the said *Barnett* was to take upon himself the payment of the said debt of said firm, to said *Craig;* that the said *Barnett* called upon this defendant, and requsted him to become his security to said *Craig*, for the amount of money owing to him for said corn, and the said *Barnett* agreed and promised, to and with this defendant, that if he, this defendant, would become his security, as aforesaid, for said sum of money, to said *Craig*, that he, the said *Barnett*, would give to this defendant a note or obligation, to be signed by himself, the said *H. A.*, and a certain *Henry Firey*, as his securities, by which this defendant should be fully indemnified and saved harmless, for any risk or liability which he would incur, as said *Barnett's* surety to said *Craig*, for the money owing him. That upon and in consideration of this promise and undertaking of the said *Barnett*, to furnish this defendant with the indemnity aforesaid, this defendant did agree to become, and did become, the security of the said *Barnett* to the said *Craig*, for the debt owing to him for said corn; and the said *Craig*, upon this defendant becoming the security of the said *Barnett*, as aforesaid, agreed to give a reasonable time for the payment of said debt. And this defendant further saith, that the said *Barnett* not having paid said *C.* for the corn, he was called on by said *C.* several times, in the fall of 1841; that in the fall of 1841, this defendant promised the said *C.*, that if said *Barnett* did not pay him the money owing for said corn, before the 1st January 1842, that he, this defendant, would give to said *C.* his own note, as said *Barnett's* security, for

the amount of said debt. That said *Barnett* not having paid said *Craig*, by the 1st January 1842, this defendant did, in the early part of January 1842, give to the said *Craig* as security of said *Barnett*, his own note for the amount of said debt; no note or obligation having been before given to said *Craig* for said debt, either by this defendant or said *Barnett*. And this defendant further saith, that said *Craig* did not agree to receive the note of this defendant, as an absolute payment of said *Barnett's* debt; nor did he agree to release said *Barnett* from said debt, in consideration of receiving this defendant's note, as aforesaid; but it was the understanding of this defendant, as well as the said *Craig*, that said *Barnett* was still liable for said debt. And this defendant further answering saith, that he had before called on said *Barnett*, either to pay said *Craig* for the corn purchased, as aforesaid, or to give to this defendant the obligation of said *Barnett*, with said *Ankeney* and *Firey*, as security, according to the original agreement above mentioned, made when this defendant agreed to become the said *Barnett's* security, as aforesaid. That having pressed the said *B.* for the indemnity aforesaid, the said *B.* brought to this defendant, about the last of January 1842, the note executed by himself and the said *Henry Ankeney*, for the payment of $263, the amount of principal and interest then supposed to be due for said corn, in favor of said *Craig*, dated 25th January 1842; a true copy of which is exhibited by the complainant with his bill of complaint. That when this defendant saw this note was made payable to said *Craig*, he objected to receiving of it; but the said *Barnett* proposed, to save himself the trouble of getting a new note, that this defendant should take it to said *Craig*, and get him to assign it to this defendant, and this defendant finally agreed with the said *Barnett*, to take said note with said *Ankeney* as security as aforesaid, as his indemnity, and that he would get it assigned to him by said *Craig*, as first suggested by said *Barnett*. This defendant and the said *Barnett*, both supposing that said *C.* would have no objection to make such assignment, as the said *C.* then held the note of this defendant for the amount of said *Barnett's* debt, which he had received several weeks before the note of

the said *Barnett* and *Ankeney*, was executed to the said *Craig:* that said note was then left in the possession of this defendant. And this defendant expressly denies the allegation in said bill of complaint, to wit, that when said note was taken to said *Craig*, he, the said *Craig*, refused to accept the same, saying, the debt due to him by said *Barnett*, was well secured by a certain *Jacob Angle, Jr.*, who was security to him for said *Barnett*. This defendant denies that the said *B.* ever did take said note to said *C.*, or that *C.* did refuse, as aforesaid, to accept the same. On the contrary thereof this defendant alleges, that if said *B.* had taken said note to said *C.*, he has no doubt that said *C.* would have accepted it, although the said *C.* might have considered the security given to him by this defendant was an ample security. And this defendant further saith, that after said *B.* had delivered the said note to him, with the understanding and agreement, that this defendant should get the said *C.* to assign it to him, this defendant retained possession. And in the month of August 1843, this defendant called on the said *Ankeney*, and requested him to make payment of the money due and owing on said note; that he then informed said *Ankeney*, that he held and owned said note, and that the money due and owing on said note was coming to this defendant. That this said defendant pressed the said *Ankeney* for the payment of said note; that the said *Ankeney*, so far from making any objection to the payment of said note, promised that he would attend to it, and expressed his thanks to this defendant for notifying him that said note had not been paid; and further stated to this defendant, that he knew said *B.* had plenty of property by which he could secure himself.

And this defendant denies that said *C.* ever refused to assign said note to him, as alleged in said bill of complaint, or that this defendant ever used any importunities with the said *C.* to obtain from him such assignment; on the contrary thereof this defendant alleges, that said *C.* did not hesitate to make such assignment, as soon as he was informed of the circumstances under which the said note had been left, by said *Barnett*, in the possession of this defendant; and this defendant further

Craig and Angle *vs.* Ankeney.—1846.

states, that he sent said note to said *Craig* on or about the 9th of November 1843, with a request, that said *C.* would put a written assignment thereon, which he did without hesitation, on the day and year last aforesaid, and then sent said note back to this defendant. That said *Barnett* and *Ankeney* having failed to pay said note, this defendant had a suit brought upon it in *Washington* county court, where it is now pending, as alleged in said bill of complaint. And this defendant saith, that he hath fully paid and satisfied the said *Craig* the amount of the note which he gave to said *Craig*, as the security of said *Barnett*. And this defendant further saith, that at the time the said *Barnett* delivered to him the said note for $263, with the said *Ankeney*, as security thereon, the said *Barnett* was perfectly able to pay said *Craig* for said corn, or to have given this defendant ample security; but when this defendant received said note, with said *Ankeney* as security, he considered himself safe, and did not ask of said *Barnett* any other security. The said *Ankeney*, by executing said note and delivering it to said *Barnett*, prevented this defendant from taking other measures to indemnify himself in any other way for his securityship for said *Barnett*.

The cause having been set down for a hearing on bill and answer, it was decreed by (Buchanan and Marshall, A. J.,) that the injunction heretofore issued in this case, be, and the same is hereby made perpetual, and that complainant be allowed his costs, to be taxed by the clerk of this court.

The defendants appealed to this court.

The cause was argued before Archer, C. J., Dorsey, Magruder and Martin, J.

By Jervis Spencer for the appellants, and
By Randall for the appellee.

Dorsey, J., delivered the opinion of this court.

According to the facts, as we are bound to assume them to be, in the decision of this case, which has been set down for final hearing on bill and answer; the averments in the bill, qualified as they are by the answers of the appellant, *Angle,*

are so defective, and insufficient, that the right of the appellant to the aid of a court of equity, may well be regarded as a matter of great doubt, even under the curing provisions of the acts of Assembly, which prevent this court from reversing any decree, or dismissing any appeal on the ground of a want of jurisdiction, or the insufficiency of the averments in the bill; unless such objections to the proceedings were raised in the court below.

The answer of *Angle* disproves the allegation in the bill, that the single bill, to prevent the recovery of which the injunction in this case was granted, was rejected by *Craig*, as a security for his debt. But that answer fails to establish the fact, that *Ankeney*, in signing this bill, intended it as an indemnity or counter security to *Angle*, for his liability to *Craig*; or that, as far as *Ankeney* was concerned, it was intended for any other purpose, than as a security to *Craig*, for the debt due to him by *Barnett*. *Angle*, and *Ankeney*, must, then, each be regarded as security to *Craig*, for the same debt, being equally bound, by separate instruments, for the payment of the whole debt. A payment thereof, by one of them, redounded with equal benefit, to the discharge of the other. Upon every principle, therefore, of morality, equity, and common justice, if one of them paid the whole debt, he had a right, by way of contribution, as well in a court of law, as in chancery, to recover, from the other security, a moiety of the sum paid.

It was contended in the argument, that *Angle* could make no claim to contribution from *Ankeney*, because they were bound, as securities, by different instruments. But there is no foundation for such a suggestion. The doctrine of contribution is not founded in contract; but is an implied equity, resting upon the plainest principles of morals and natural justice. For, in the language of justice *Story*, "as all are equally bound, and are equally relieved, it seems but just, that in such a case, all shall contribute in proportion, towards a benefit obtained by all, upon the maxim, '*qui sentit commodum sentire debet et onus.*'" In commenting upon this subject, the learned justice, in 1 *Story's Equity p.* 549 *sec.*

495 states, that "originally, it seems to have been questioned, whether contribution between sureties, unless founded upon some positive contract between them, incurring such liability, was a matter capable of being enforced at law. But there is now no doubt, that it may be enforced at law, as well as in equity, although no such contract exists. And it matters not, in case of a debt, whether the sureties are jointly and severally bound, or only severally; or whether their suretyship arise under the same obligation or instrument, or under divers obligations or instruments, if all the instruments are for the same identical debt." The same principles are laid down with equal perspicuity and distinctness in the I *Law. Lib.*, 160, where it is stated, that "the right to contribution exists between all sureties of the same degree, whether they are engaged jointly or severally, and if severally, whether they are engaged all in one instrument or several instruments, and whether they have a knowledge of one anothers' engagements or not;—because, in all these different cases, a payment by one surety, is equally a benefit to all other sureties."

It hence follows, that it would be against equity and justice to permit *Angle* to recover from *Ankeney*, more than a moiety of the amount paid by the former, in satisfaction of a debt, for the payment of which both were equally responsible. And it is equally opposed to equity and conscience, that *Washington* county court should have unconditionally arrested the arm of the law, in the suit on the law side of the court, by *Angle* against *Ankeney*; and by a perpetual injunction have prohibited the former from recovering any thing at law against the latter. It is one of the oldest and soundest maxims of chancery jurisdiction, "that he who seeks equity, must do equity." And it is a maxim equally well established, that a court of chancery never will, against equity and conscience, interpose, by way of injunction, to arrest the progress of proceedings at law; unless required so to do, upon principles of public policy. Such principles of policy have nothing to do with the case now before us. What then should *Ankeney* properly have shewn by the statements in his bill, to entitle himself to the relief which he sought? He should have stated that he tendered to *Angle*

the moiety, with the interest thereon, of the single bill, which he had given to *Craig;* or that he was ready and willing to bring the same into court to be paid to *Angle,* unless upon the condition of his willingness to make such payment, he had no standing in a court of equity; nor even a colorable right to the interposition of such a court, in his behalf, in the mode in which he has applied for it.

It appearing to this court, upon the facts as brought before it, upon the final hearing on the bill and answers, that the purposes of equity and justice would be subserved by the granting of a perpetual injunction in this case, upon the defendant, *Ankeny,* paying to the appellant *Angle,* or bringing the same into *Washington* county court to be paid to him, one-half part of the principal and interest due on the single bill in question, this court will pass a decree reversing the decree of the court below, (but without costs in either court to either of the parties,) unless the said *Ankeny* shall, on or before the first day of June next, make such payment into said court, or to the appellant *Angle.*

DECREE REVERSED WITHOUT COSTS.