# MARY WARREN *vs.* SLATER D. TWILLEY.

Allowing an amended answer to be filed in an equity cause is a matter of *discretion*, and therefore not subject to revision on appeal.

The act of 1852, ch. 133, in reference to the effect of answers as evidence has not changed the practice as regards the effect of an answer, when a cause at final hearing is heard upon bill and answer.

The only design of that act was to avoid the old rule in regard to the effect of an answer as evidence when the cause was heard on bill, answer, replication and proof.

Where a cause is heard on bill and answer, the latter is to be considered as true in regard to all matters stated in it which are susceptible of proof by legitimate evidence.

After a cause is set down for hearing upon bill, answer and exhibits, without any proof taken, the complainant has no right to put in a replication until he obtains leave of the court or the consent of the defendant.

When such leave is asked for, the court will prescribe the terms on which it may be done, and will take care to give the defendant an opportunity to offer proof of the matters set forth in his answer.

Leave of the court to authorise any material amendment of a bill or answer is required, and if a second answer is filed without leave it will be taken off the file.

Where the wife of one of the joint owners of lands, unites with her husband, as complainant, in a bill for partition, and the property is sold under a decree upon such a bill, her potential right of dower is barred by such sale, especially since the act of 1839, ch. 23.

When a sale is made in such a case and ratified, any inchoate or possible right of dower in the land is transferred to the proceeds of sale, out of which the court has full power to provide therefor, and if such proceeds are not correctly distributed by the court, the *purchaser* is not responsible for such error.

The courts have manifested an unwillingness to interfere with the rights of purchasers claiming title under a judgment or decree, even where such judgment or decree may not have been based upon proceedings wholly regular.

APPEAL from the Equity Side of the Circuit Court for Dorchester county.

The bill in this case was filed by the appellant on the 1st of December 1852, claiming dower out of certain real estate of which her husband Noble Warren was seized during the coverture, and which had been sold during his lifetime without any relinquishment of her dower therein, and also claim-

Warren *vs.* Twilley.

ing rents and profits for arrears of dower from the death of her husband.

To this bill the defendant, Twilley, on the 20th of April 1853, filed an answer, under oath, alleging that he ·purchased the land at trustee's sale under a decree in chancery during the lifetime of Noble Warren, and long prior to his death, and as he supposed and was assured, purchased an unincumbered title; that he never knew or heard of the complainant's claim until some time during the last year, when respondent proposed to her to lay off the dower and pay her rent until this was done, but refused to pay arrears of rent as claimed; that ever since her claim was made known to him he has been and is now ready and willing to lay off and assign to her her dower, but is not willing to pay arrears of rent beyond the time when demand was made, for various reasons stated in the answer.

To this answer a general replication was entered by the complainant on the 1st of August 1853, and the cause set down for hearing by the 2nd day of the next term.

On the 19th of October 1853, the defendant petitioned for leave to file a *supplemental* answer, and afterwards, on the 8th of May 1854, for leave to file an *amended* answer. The petition for amendment, made under oath, sets up the defence, that since the filing of the original answer the defendant has discovered that in the lifetime of Noble Warren the complainant joined with her said husband in a bill or suit in the court of chancery for the sale of the land in question for partition, and that under a decree passed upon this bill the land was sold and conveyed by the trustee to the defendant clear of all incumbrances, except the dower of one Margaret Twilley, and prays that he may be permitted to withdraw from his answer that portion of it which admits his willingness to have the dower laid off, and for leave to file an amended answer. The exhibits filed with this petition, consisting of the bill in chancery, decree, trustee's report of sale, auditor's report distributing the proceeds, and the trustee's deed to the puchaser, show that the bill was filed by "Noble Warren and Mary his wife," and others, including the defendant in this case and his wife, that

the decree, in the usual form, passed on the 23rd of December 1845, and that the land was sold to the defendant by the trustee on the 2nd of February 1846, "subject to the right of dower of Slater D. Twilley's wife, who was the widow of William Warren," "she being opposed to the sale of her dower interest."

Upon this petition the court (SPENCE, J.,) on the 11th of May 1854, passed an order that the petitioner have leave to amend his answer as prayed upon payment of costs, and the amended answer was accordingly filed on the 15th of July following.

The record then states that on the 26th of July 1854, "the cause was set down for argument by consent on the 27th instant," on which latter day a special judge was appointed by consent to try the case; and that "afterwards, on the 9th of August 1854, the complainant by her solicitor entered a general replication to the amended answer of the defendant."

On the 16th of August 1854, the court (LE COMPTE, special judge,) passed a decree dismissing the bill, the form of which is stated in the opinion of this court. From this decree the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, and TUCK, J.

*Elias Griswold*, for the appellant argued:

1st. That the right of dower is clearly admitted by the first answer, and a defendant in equity cannot by a supplemental or amended answer, retract a clear and well understood admission made under oath. 1 *Bland*, 162, *McKim vs. Thompson*. 3 *Atk.*, 522, *Pearce vs. Grove*. This is not one of the extreme cases of *surprise* or *newly discovered evidence* wherein a defendent may amend his answer, and indeed there is no case where a defendant has been allowed to retract a clear admission made under oath. But in this case he was a complainant in the chancery case, under the decree in which the land was sold, and he became the purchaser. He was well acquainted with all the facts of the case and knew that his wife's *dower* was not sold, although she was a party complainant

Warren vs. Twilley.

with him; that Noble Warren and himself gave in the names of their wives, as complainants, to the solicitor who filed the bill, supposing they would consent, and that his own wife never did consent but publicly objected; that Mary Warren never did consent, but being a woman who knew nothing of business, and the husband silent about her objections, the case went on without her interposition one way or another. I say this, in the way of argument, to show his entire familiarity as a party with the whole transaction. Upon his knowledge, in his *first answer* he *admits* Mary Warren's right of dower, yet says his impression was that "he purchased an unincumbered title, and he never imagined that the complainant or *any other person* had any right, claim or demand," &c.; and in his petition for leave to file the amended answer, which is *sworn to*, he says he, the purchaser, at the sale and *"at the time understood* from the trustee that he was selling clear of all incumbrances *except* the *dower* of *Margaret Twilley,"* and then appeals to Mary Warren's *silence* as evidence that she had abandoned her right. We therefore insist that the learned judge erred in allowing the amended answer upon *sworn* statements so contradictory and suspicious in themselves, from a defendant familiar as party and purchaser with all the facts, and to let in a defence technical and unconscionable, that, as she appears in the proceeding as a party complainant, she must be considered to have assented.

2nd. That though a court of equity will, with reluctance, sometimes in cases of surprise or *new-discovered evidence*, allow amendments to a sworn answer, it will never do so for the purpose of substituting a *debatable* defence after a clear admission. *Story's Eq. Pl.*, Sec. 896.

3rd, That the complainant having put in a general replication, it necessarily puts the defendant upon proof of his denials with right of cross-interrogatories to the complainant. 1 *Bland,* 486, *Estep vs. Watkins.* 2 *Do.*, 264, *Contee vs. Dawson.* 12 *G: & J.*, 271, *Glenn vs. Hebb.* The answers are to be taken together. The present practice does not allow the first to be taken from the file, and the second is not a *substitute.* *Md. Ch. Pr.*, 62, 110. The right of dower is admit-

Warren *vs.* Twilley.

ted, and there is a *general replication.* The complainant needs no proof of what is admitted. The subsequent excuses and averments stand denied, and are not, by the defendant, proved. The exhibits appended to the petition to amend, if a part of the petition, are so merely as averments and recitations. We insist, therefore, that the defendant having admitted the right of dower, and no proof being adduced to support the amended answer, the complainant is entitled to a decree in her favor, the cause having been set down for hearing by the defendant's consent.

4th. Admitting that a decree passes all the rights of all the parties to a suit, complainants and defendants, and that courts have the undoubted right so to decree, it must be understood with the limitation that they are *properly* parties, and in the case of married women must be with their consent and knowledge, else the protection afforded by law of their examination out of the presence and hearing of their husbands upon a conveyance, and other protecting solemnities, are useless absurdities: for without her knowledge a husband or solicitor may make her a party to a proceeding in equity which effectually disposes of all her rights. If the fact that she appeared as complainant authorises the presumption of consent, why then was not Margaret Twilley's right of dower sold? By the same argument *she* was a party to the bill for a sale: the decree directs the sale of the rights of *all parties.* But the *trustee* reports that she objects, and forthwith the auditor recognised her right of objection and reserves her right in the distribution of the fund. Then it rests with the trustee *by his report* to avoid or not the inchoate right of dower of the wives of the parties. This cannot be. But why do Margaret Twilley's objections *appear?* The reason is very simple. Her husband was about to become the *purchaser*, and by publicly announcing the estate as encumbered with this dower it would not bring as high a price, and he and his wife would pocket the gain, and the dower. If the dower of Margaret Twilley and Mary Warren are *both*, by the decree, ordered to be sold, then Mary Warren in right of her husband, and the other parties, have been defrauded to the amount of Margaret Twil-

ley's dower or such additional sum as would have been bid without that incumbrance. But we contend that the dower of neither was sold. It is not in the power of a husband, or solicitor, by making them parties to avoid their rights; in other words a married woman's name simply appearing as a party complainant does not bind her. The court in equity has the full power to sell her inchoate right, but only when she is properly a party by *solemn written consent;* and while we find no authority directly in point, except that of sound sense and parity of reasoning from the imperative legal formalities necessary to a conveyance by the wife, yet there is on the other hand no authority to authorise their being made parties otherwise than by their express written consent.

*James Wallace,* for the appellee argued:

1st. That there was no error in allowing the defendant to amend his answer; it was clearly within the discretion and duty of the court to allow it. The circumstances and facts of the case bring it within that class of cases wherein, by the practice of courts of equity, amendments are allowed. It is a case of newly discovered evidence material to a *fair* ascertainment of the merits of the case, and in such a case there can be no doubt of the right of the court to allow the amendment, if it be satisfied there is no attempt to evade the justice and equity of the case, or to set up ingeniously contrived subterfuges. The reluctance of the courts is great, it is well known, particularly when the object is to let in parol evidence, but when written papers and records omitted by ignorance, accident, or mistake, are sought to be introduced, the same reason does not apply. The whole subject rests with the sound judgment of the court, and if the court be satisfied that the reasons are sound and cogent, and that right will be obtained by allowing the amendment, they have the power. *Story's Eq. Pl.,* sec. 896, *note* 5. *Mitford's Eq.,* 327, 328. If then the whole subject of amendment be within the sound discretion of the court, and they exercise that discretion, is that a proper subject of review on appeal? Is it not analogous to a motion for a new trial or amendment of pleadings at law?

But even if by the practice of the courts of this State, hitherto there was no power to grant the amendment, still, by the act of 1854, ch. 230, a new system has been introduced, and by that statute the proceedings in courts of equity are placed on the same footing with proceedings at law, and all amendments to bring the case to a fair hearing are allowed at any stage of the proceedings before a final hearing.

2nd. The facts set forth in the amended answer, and admitted by the complainant to be true, show that the potential right of dower had been sold by a court of competent jurisdiction, and the complainant had no right, and her bill was therefore properly dismissed. The argument on the other side, that there was no proof of the defence set up in this answer, because a general replication was filed to it, has no force, for no replication was entered or filed until *twelve days after the case was argued.* The cause was taken up on bill, answer and exhibits, and such being the case the truth of the amended answer and exhibits was admitted. 12 *G. & J.,* 271, *Glenn vs. Hebb. Md. Ch. Pr.,* 66. 2 *Bland,* 267, *Contee vs. Dawson.* The record shows, that when the cause was set down for hearing, and when it was argued, there was no replication, but that it was heard on bill and answers alone. The replication was *noted* twelve days after, but how, or for what purpose, does not appear, and is unknown to the defendant. By the facts brought out by this amended answer, and admitted to be true, it seems that the complainant was made a party to a suit in the lifetime of her husband for the sale of her interest in this real estate; that a decree of the court of chancery was passed on the 23rd of December 1845, for the sale thereof, free and clear of the rights of all the parties to the suit; and that the sale so ordered was made and satisfied, and a deed executed passing the interest of the parties, as decreed, to this defendant. Such being the facts the argument against the sale of the complainant's rights has no force, because if the court of chancery erred in decreeing it, the only remedy was to appeal from that decree, and not to attempt to reverse it by another decree in another court. But courts of equity have the power in this State to decree a sale of all interests in real estate, especially in cases

of potential right of dower in lands held jointly by the husband of a *feme covert* and another person, as in this case, by the act of 1839, ch. 23.  This land was held jointly by her husband and another, and she was made a party for the purpose of selling her potential right of dower in accordance with the provisions of this act; and the proceedings in the chancery case show that a decree was passed for the sale clear of all the interest of all the parties to the cause, and the trustee's report shows, that he did so sell and that this defendant became the purchaser.  The statement of the trustee, that he *did not sell* the interest of Margaret Twilley, one of the parties, and silence as to any other exception, is conclusive that he did not except any other, but sold all other rights as decreed.

ECCLESTON J., delivered the opinion of this court.

The first ground urged by the appellant for a reversal of the decree of the circuit court is, that the judge erred in permitting the defendant to file his amended answer.  But that being a matter of discretion is not subject to revision on appeal.

In *Thomas vs. Doub*, 1 *Md. Rep.*, 324, an application by the defendant for permission to file an amended answer having been refused by the chancellor, it was held that such refusal could not be revised in this court, because it was the exercise of a discretionary power.  If this be true in regard to refusing it must be equally so in reference to allowing the amendment. See also the act of 1854, ch. 230, which provides, that "it shall and may be lawful, upon application of either complainant or defendant to any court in this State, sitting as a court of equity, and upon payment of such costs as the court may direct, to amend at any time before final decree, the bill, answer, pleas, demurrers, or any of the proceedings in any cause before the court, so as to bring the merits of the case in controversy fairly to trial."

The answer as amended having been received by order of the court, the question is, what effect it should have upon the case; and in reference to this question we propose first to ascertain whether the act of 1852, ch. 133, has changed the practice in chancery as regards the effect of an answer, when a cause at final hearing is heard upon bill and answer.

The act declares: "That no answer of any defendant, to any bill or petition to be hereafter filed in the courts of equity in this State, shall be evidence against the complainant or complainants, unless by the bill or petition, such answer shall be required to be made under the oath of the respondent or respondents; or unless at the hearing of the cause the complainants shall read the answer as evidence, in which case it shall have the same effect, as to the party reading the same, as if it had been required to be made under oath."

Looking to the material difference, prior to this act, between the effect of an answer at final hearing upon bill and answer, and its effect when the cause is heard on bill, answer, replication and proof, and considering the evil which the act seems designed to remedy, we think it was not intended to apply to the former class of cases, but to the latter. In the former the answer in all points was admitted to be true, because the complainant, if he saw fit to do so, had the power to prevent a hearing on bill and answer. But in the latter, an answer, even when regularly denied and proof demanded, so far as responsive to the bill, was not only evidence for the defendant, but such evidence as could not be overcome, unless by the testimony of two witnesses, or of one sustained by corroborating circumstances. And from the effect of this rule the complainant had no means of relieving himself. To afford him an opportunity of doing so, the act, in our opinion, was passed; and therefore has provided that an answer shall not be evidence if not required to be made under oath, and not read by the complainant as evidence at the hearing of the cause. As, therefore, whether the answer shall be evidence or not, is made to depend upon the course which the complainant may, at his discretion, think proper to pursue, it would seem to have been designed by the act to provide for the exercise of such a discretion, in reference to a hearing, at which, under the old practice, he could not do so. But seeing that the plaintiff had the power to prevent a cause from being brought to a hearing, on bill and answer, by adopting the means within his own control, there was no necessity whatever to change the effect of an answer at such hearing. And we think the

legislature intended to put it in the power of the complainant to get rid of what was supposed to be an improper advantage on the part of the defendant, under the old practice, by reason of the influence on the case which the answer had as evidence, even when regularly denied and proof required. But the complainant previously having the power of preventing a hearing upon bill and answer, there was no necessity to change the effect of an answer at such hearing; and therefore, in the absence of any necessity for legislation on the subject, it is not reasonable to suppose it was designed by the act of 1852 to change a long and well established practice.

The reason assigned by the authorities why the hearing of a case on bill and answer has been considered as admitting the truth of the answer, is, that because no replication being put in the complainant has not chosen to allow the opposite party an opportunity of furnishing proof in support of his defence, and consequently the answer should be conceded to be true. If, notwithstanding the late act, this rule is held to be still in force, a complainant will not be denied the benefit intended for him by the legislature, as by taking proper steps he can require the answer to be proved, and then, if he has chosen not to call for the answer under oath, and has not thought proper to read it at the hearing, it will not be evidence against him, but must be proved. He will therefore have the privilege of deciding for himself, whether the answer, at final hearing, shall or shall not be evidence of its truth. If, in the exercise of his discretion, he thinks proper to have the case heard upon bill and answer, he should be considered as virtually consenting that the answer is true in regard to all matters stated in it, which are susceptible of proof, by legitimate evidence. How far the truth of an answer is admitted on such a hearing may be seen by reference to 2 *Daniel's Ch. Pl. & Pr.,* 966, *(Ed. of* 1846.) *Story's Eq. Pl., sec.* 877. 1 *Bl. Ch. Rep.,* 201, *note. Ibid.,* 488. 3 *Do.,* 409, 410. 3 *Black. Com.,* 448. 7 *John. Ch. Rep.,* 217. 5 *Munford's Rep.,* 72.

Whilst our interpretation of the act of 1852, will afford a complainant the relief which by it was evidently designed,

and imposes nothing upon him against which he cannot sufficiently protect himself by his discretionary power, a different construction of the act might work injustice to the defendant.

As the law stood prior to this late act, if by consent a case was set down for hearing on bill and answer, it operated as an agreement or understanding, that the answer should be considered as true in all points; and we cannot suppose the legislature designed either to prevent the parties from so consenting to have a case heard or to change the effect of an answer at such a hearing.

What has been here said is not to be considered as intimating any opinion in reference to the act of 1853, ch. 344, except that we do not understand that act as having any effect upon this case.

After the second answer came in, the cause, by consent, on the 26th of July 1854, was set down for hearing on the following day. To the answer as amended a replication was entered on the 9th of August, but without permission to do so having been applied for or obtained from the court, or by consent of the defendant.

After a cause is set down for hearing upon bill, answer and exhibits, without any proof having been taken, the complainant has no right to put in a replication until he obtains from the court, or by consent of the defendant, authority to do so. A different practice might subject a defendant to the danger of having his answer denied at any time before the decree; although in consequence of the cause being set down for hearing without a replication, and perhaps having been argued, or submitted without argument, he had good reason for believing his answer was admitted to be true, and therefore it was unnecessary for him to furnish evidence in support of his defence.

Upon an application to the judge to suffer an order setting down a cause for hearing to be withdrawn, for the purpose of allowing a replication to be put in, he will prescribe the terms on which it may be done, and will take care to give the defendant an opportunity to offer proof of the matters set forth in his answer. See *Daniel's Ch. Plea. & Pr.*, 1190.

A replication coming in after a cause has been set down for

hearing upon bill, answer and exhibits, makes a very material change in the condition of the case, and as the rights of the defendant are seriously affected thereby, his consent, or an order of the court allowing such a change is necessary. Leave of the court, to authorise any material amendment of a bill or answer is required. *Alex. Ch. Pr.*, 62, 110. And if a second answer is filed without leave it will be taken off the file. *Thomas vs. Visitors of Frederick County School,* 7 G. & J., 387. As this is true, why should not a complainant be required to obtain leave before he can file his replication, when the case is in the condition spoken of?

The record states that a replication to the amended answer was entered on the 9th of August 1854, by the complainant's solicitors, but there is nothing to show that this was done, by consent or by the authority of the court, upon an application for that purpose. And in deciding the cause it is evident the judge treated it as if there was no such replication. The decree commences by saying: "This cause standing ready for hearing and being submitted upon bill, answer and exhibits, to the undersigned specially appointed," &c. And in dismissing the bill the judge evidently held the second answer, not only to be properly in the cause, but admitted to be true and sufficient with the exhibits, without any other proof, to sustain the defence. See 5 *Munf. Rep.*, 482, *Pickett & Wife vs. Chilton.*

Feeling ourselves bound to consider the second answer as regularly in the case, we cannot reverse the decision below, although the judge, under the circumstances in relation to the replication, treated the cause as if heard upon bill, answer and exhibits, and held the answer to be admitted as true, under the state of the pleadings. The answer, when so considered, establishes a purchase by the defendant, of the land in dispute, under a decree to sell the same for partition, in a cause where the present appellant, being then the wife of one of the joint owners of the property, was a co-complainant with her husband and others.

It is by no means certain, that, even prior to the act of 1839, ch. 23, a sale under such a decree for *partition* would

not bar a "potential" or inchoate right of dower in the wife of one of the joint owners of the land.    But conceding that such a sale would not have barred her right to dower in the property, after her husband's decease, if the sale had taken place before this act, there can be no doubt, that under like circumstances, occurring since the year 1839, she cannot demand dower of the purchaser, inasmuch as the act referred to provides, that a decree may be passed directing a sale of land or real estate held jointly, or in common by two or more persons; and that a sale under such a decree shall pass to the purchaser all the interest and estate of all persons who are parties to the suit, either complainants or defendants; and also further provides, that "if any *feme covert*, by marriage with one of the joint tenants or tenants in common, shall have acquired a potential right of dower in part of the estate to be sold, such right of dower is hereby expressly declared to be within the power of the court or judge to decree the sale, she being made a party to the proceedings, either complainant or defendant."

This was a purchase under a decree in a case, where the act of 1839, had conferred express authority on the court to sell the inchoate dower right of such a party as the present plaintiff then was; and there is no proof before us, or even any allegation contained in the record, that in the former case she was made a party complainant without her consent or knowledge, or that any undue advantage was taken of her, unless it should be inferred from the mere fact that there was nothing in the record of that suit to show she consented to be made a party, except that she was named as a complainant in the bill.

Property purchased by the defendant under such a decree to sell for partition, we think is not subject to the plaintiff's claim for dower.    When the sale was made and ratified any inchoate or possible dower right of Mrs. Warren in the land, to which she may previously have been entitled, was transferred to the proceeds of sale, out of which the court had full power to provide for any legitimate claim on account of dower. And if the proceeds were not correctly distributed by the court the purchaser could not be held responsible for an error of that kind.

The courts have manifested an unwillingness to interfere with the rights of purchasers claiming title under a judgment or decree, even where such judgment or decree may not have been based upon proceedings *wholly regular.* See *Baker & others vs. Morgans,* 2 *Dow's Rep.,* 526, and *Bennett vs. Hamill,* 2 *Sch. & Lef.,* 577.

The views expressed in this opinion we deem sufficient to justify an affirmance of the decision below, for which purpose a decree will be signed giving costs to the appellee.

*Decree affirmed.*