# THE ALFRED RICHARDS BRICK COMPANY

*v.*

# TROTT.

---

EQUITY PLEADING AND PRACTICE; HEARING ON BILL, ANSWER AND REPLICATION.

1. A defendant in equity can not, by setting the cause down for hearing on bill, answer and replication, deprive the complainant of the right to establish the material allegations of the bill, nor deprive him of the right to controvert and disprove the averments of the answer.

2. Where a cause in equity is set down for hearing after the filing of a general replication, the facts alleged in the answer as a defense are denied.

3. On an appeal by the complainant from a decree dismissing his bill after the cause has been set down for hearing by one of several defendants upon bill, answer and a decree *pro confesso* against the other defendants, it can not be assumed that it was the intention of the defendant to waive or abandon his answer and to submit the case on the allegations of the bill alone, but the decree will be reversed upon the ground that the°cause was improperly and improvidently set down for hearing.

No. 957.· Submitted March 6, 1900. Decided April 3, 1900.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity after the cause had been set down for hearing by one of several defendants, upon bill, answer and replication, and a decree *pro confesso* against the other defendants. *Reversed.*

The facts are sufficiently stated in the opinion. 。

*Mr. Wm. C. Prentiss* for the appellant:

The defendant can not deprive the complainant of the right to offer proof in support of the bill and in rebuttal of the answer, and by thus setting the cause down for hearing the defendant must be held to waive his answer and admit all the allegations of the bill. Barroll Md. Chan. Prac. 143; *Lowry* v. *McGee,* 13 Tenn. (5 Yerg.), 237; *Dascomb* v. *Marston,* 80 Maine, 223; *Burrell* v. *Hackey,* 35 Fed. Rep. 833; *Slason* v. *Wright,* 14 Vt. 208; *Doolittle* v. *Gookin,* 10 Vt. 265; *Ware* v. *Richardson,* 3 Md. 505; *Mason* v. *Martin,* 4 Md. 134; *Ricker* v. *Railway,* 90 Me. 395; *Brinckerhoff* v. *Brown,* 7 Johns. Ch. 223; *Baker* v. *Wild,* 1 Vernon, 140.

*Mr. D. O'C. Callaghan* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed to enforce payment of a balance due on a lien claimed for· materials furnished for

the erection of eight houses in the city of Washington. The claim is for bricks furnished by the appellant, The Alfred Richards Brick Company, to Charles V. Trott, the owner and builder of the houses, and the lien was taken against all eight houses and the lots of ground upon which they were erected.

The bill was filed against the defendant, Trott, and his alienee, Samuel E. Rabbitt, and Charles W. Handy and Charles C. Glover, trustees, to whom had been conveyed part of the ground and buildings included in the lien claim, the part so conveyed in trust being lot 135 in subdivision, etc., and James Edgar Smith, the holder of the debt intended to be secured by the said deed of trust. It is alleged that the sale and conveyance of lot 135, by Trott to the defendant Rabbitt, was subject to a previous deed of trust thereon to Handy and Glover.

It is alleged in the bill, by the third paragraph thereof, that the defendant Trott was the owner in fee of certain real estate, known as lots numbers 135 to 142, both inclusive, in Trott's subdivision of lots number 89, 90, and the east four feet of lot number 91, in McGuire's subdivision in square number 555, in the city of Washington; and that, being such owner, the said Trott, on or about the 23d of May, 1893, began the erection of eight dwelling houses thereon, of similar size and structure, one upon each of said lots, and substantially completed the same on or about the 23d of January, 1894.

By the fourth paragraph of the bill, it is alleged that the plaintiff contracted with said Trott to furnish him the bricks for the construction of the eight houses on said lots, and that it did, accordingly, between May 23 and September 27, 1893, deliver the bricks, and they were used in the construction of the said houses, to the value of $1,717.97, that being the fair value of the same. And by the fifth and sixth paragraphs of the bill, that said Trott failing to pay for the bricks so furnished, the plaintiff became entitled to

a lien therefor, and that, on the 23d day of January, 1894, it filed in the clerk's office of said District its claim, with notice of intention to hold a lien upon the before described premises for the payment of the amount of the claim for the bricks so furnished. And by the seventh paragraph of the bill, it is alleged, that after the claim was so filed and notice given of record, seven-eighths of the amount of said claim, to wit, the sum of $1,503.22, was paid by the purchasers of lots numbers 136 to 142, inclusive, as aforesaid, in full satisfaction of the amount of said lien for which the said lots were liable, leaving a balance of $214.75 still due and unpaid, and for which the plaintiff is entitled to have such balance of its lien enforced against the said lot 135.

It is further alleged, that, on the 4th of September, 1893, while the buildings were in course of erection, the defendant, Trott, conveyed said lot number 135 to the defendants, Charles W. Handy and Charles C. Glover, as trustees, to secure the sum of $1,300, due to the defendant James Edgar Smith; but that said deed of trust was subject to the lien in favor of the plaintiff. And further, that on the 7th of September, 1893, the defendant Trott sold and conveyed said lot number 135 to the defendant Rabbitt.

The relief prayed for is, that the lien may be enforced against the said lot number 135 and the improvements thereon, to the extent of its claim; and that a sale of said premises be decreed; and for such further and other relief as the nature of the case may require.

The defendants having been summoned, but failing to appear and answer, the bill, on the 8th of February, 1895, was decreed to be taken *pro confesso* as against the defendants Trott, Handy, Glover and Smith; and on the 6th of March, 1895, the bill was also taken *pro confesso* as against the defendant Rabbit. But the latter order, taking the bill *pro confesso* as against Rabbitt, was vacated, by order of court, on the 18th of March, 1895, and the defendant was allowed to answer the bill.

By the answer of the defendant Rabbitt, he virtually denies all the material facts set forth in the bill. He admits the building of the eight houses, and the filing of the lien claim, but submits that it was filed too late. He also admits that seven-eighths of the original claim had been paid some time after the claim was filed, leaving a balance of the original claim of only $214.75, which is still claimed to be due. But he denies that all the eight houses were of the same size and value; and he avers that if the original lien claim for materials furnished be apportionable among the several houses, the amount furnished for the particular house erected on lot number 135 was less than one-eighth of the whole claim, as said building on lot 135 is one of the second or smaller class, and therefore of less value than some of the others of the eight. He denies that the claim is apportionable, and insists that by receiving the $1,503.22, and releasing the other houses and lots of the lien, the house and lot 135 was also released. He denies all knowledge of the facts alleged in the fourth and fifth paragraphs of the bill, and demands proof thereof.

It is not alleged, either in the bill or answer, when the other lots, numbers 136 to 142, both inclusive, were in fact sold by Trott, but it is admitted in the answer that the seven-eighths of the lien claim was paid, and was released of record by the plaintiff, as to the seven houses sold, on December 17, 1894. The original claim for bricks furnished is made out as an entire claim, without designating any particular house or lot upon which they were to be used; nor is the contract, under which the bricks were furnished, and which is referred to in the notice of lien, made part of the record, and is not, therefore, before the court. The party or parties who purchased the seven lots are not parties to this suit.

To the answer filed by the defendant Rabbitt, the purchaser of lot 135, the plaintiff entered a general replication. And thereupon the defendant Rabbitt, by his solicitor,

directed the clerk of the court to set the "cause down for hearing on the bill, answer of Samuel E. Rabbitt thereto, and the replication to said answer, and the decree *pro confesso*, against his co-defendants."

Upon the case being thus presented, and having been argued, the court below, by its decree of the 18th of December, 1899, dismissed the bill, with costs to the defendant Rabbitt.

Upon the case being so disposed of by the court below, and being presented to this court on appeal upon the proceedings just recited, it becomes necessary to determine a question of procedure, arising under the rules of the court below, taken in connection with settled rules of equity pleading, and which may render it proper that the decree dismissing the bill should be reversed, and the cause be remanded for further proceedings.

Equity rule 64, of the court below, provides that, "No cause in equity shall be set down for hearing unless the same be at issue and ready for hearing, or be properly set down for hearing on bill and answer, or bill and answer and replication; and every such cause may be ordered by either party or his counsel to be placed upon the calendar, provided such order be given at least five days previous to the first day of the next term." And by rule 65 it is declared, that the answer shall not be evidence for the party making it except under certain conditions (which do not exist here), "unless the cause be set down on bill and answer only."

As will be observed in this case, after replication filed by the plaintiff, it was the defendant who set the case down to be heard on bill, answer and replication; and, upon such presentation, the question is, what office does the answer perform, or can it have any effect whatever? It is certainly not within the power of the defendant, by setting the case down for hearing on such state of pleading, to deprive the plaintiff of the right to establish the material facts charged

in his bill, nor to deprive him of the right to controvert and disprove the averments of the answer. In order to make an issue to enable the plaintiff to establish the facts alleged in his bill and to deny and controvert those set up in the answer, a replication is essential. A general replica-cation, such as was interposed by the plaintiff in this case, and which is now alone used in our equity practice, is a general denial of the truth of the defendant's plea or answer, and of the sufficiency of the matter alleged in it to bar the plaintiff's suit, and an assertion of the truth and sufficiency of the bill. Cooper Eq. Pl., 329, 330; Mitf. Eq. Pl., 321, 322; Sto. Eq. Pl., Sec. 878. For the form of the general replication when extended in full, see Barton's Suit in Equity, 144, 145, and Sto. Eq. Pl., Sec. 878, in note. With the replication standing in the case, and no such facts admitted by the the answer as will support the claim set up by the plaintiff in his bill, it would seem to be quite impos-sible that the merits of the case, whatever they may be, could have been reached and considered upon such a submission of the case.

If the plaintiff concludes to set down the cause for hear-ing, upon bill and answer, the case is quite different. In that case, it behooves the plaintiff, however, to consider well whether he will rest his case upon the bill and answer, or whether he will reply to the answer; for it must be borne in mind, that, in a hearing upon bill and answer, the answer will be taken to be true in every point and particu-lar, because the defendant has been, by the action of the plaintiff, precluded from substantiating it by proof. The plaintiff should be careful therefore to look attentively into the answer, and see that the effect of the defendant's admis-sions is not avoided by any new matter. If such should be the case, he should reply to the answer, and proceed to establish his case by evidence. It may, sometimes, also be found to be necessary to reply to the answer, in order to put the defendant to the proof of the allegations of his

answer; as where he confesses the matter alleged by the plaintiff, but sets forth some further matter in avoidance, or in bar of the plaintiff's equity. Cooper Eq. Pl. 329; 2 Dan. Ch. Prac. & Pl. 966, 967. The same principle is very clearly laid down by Alexander in his Maryland Chancery Practice, 66; and it is the long and well established practice in equity procedure, enforced in all courts where the principles of equity pleading obtain. *Estep* v. *Watkins*, 1 Bland Ch. 486; *Jones* v. *McGill*, 1 Bland Ch. 177; *Contee* v. *Dawson*, 2 Bland Ch. 264; *Craig* v. *Ankeney*, 4 Gill, 225; *Warren* v. *Twilley*, 10 Md. 39. It is also well settled, that where a cause is set down for hearing after the general replication is in, the facts alleged in the answer as a defense are denied. *Glenn* v. *Hebb*, 12 Gill & J. 271. Indeed, without nullifying the replication, it could not, upon principle, be otherwise. There may be cases, however, where the answer admits facts without avoidance, sufficient to justify relief, notwithstanding the general replication, as in the case just referred to of *Glenn* v. *Hebb*; but such is not this case. And it is not pretended that the order taking the bill as confessed, as against some of the defendants, could have the effect of making the facts alleged in the bill evidence against a defendant answering the bill and controverting those facts.

It is very clear, we think, that the cause was improvidently and improperly set down for hearing by the defendant, on the bill, answer and general replication; as by setting the case down for hearing on such state of pleading we can not suppose it was the intention of the defendant to waive or abandon his answer, and to submit the case on the allegations of the bill alone. Indeed, the terms of the submission completely negative any such suggestion.

We shall therefore reverse the decree appealed from, and remand the cause that it may be proceeded with in regular order, to the end that it may be heard on its merits, as such merits, if any, shall be properly disclosed.

*Decree reversed, and cause remanded.*